184 So. 540

**STATE v. MIGUES.**

No. 34899.

June 27, 1938.

Rehearing Denied Oct. 31, 1938.

C. Arthur Provost, of New Iberia, for appellant.

Gaston L. Porterie, Atty. Gen., James O'Connor, First Asst. Atty. Gen., L. O. Pecot, Dist. Atty., of Franklin, and S. O. Landry, Asst. Dist. Atty., of New Iberia, for appellee.

ROGERS, Justice.

The defendant, Honore Migues, was indicted, tried and convicted for the murder of Mrs. Evelyn Allen Crawford. His motion for a new trial was overruled and he was sentenced to death. His appeal presents five formal bills of exception.

Bills Nos. 1 and 2 cover the same subject matter. They were reserved to the overruling of defendant's objection to the manner in which the names of the jurors were drawn from the tales jury box.

When all but ten of the jurors on the regular venire had been called and no juror having been accepted, the trial judge realized that it would be impossible to obtain a jury from the regular venire. In this situation he asked counsel for the state and counsel for the defendant if they would waive the opening of the tales jury box. Counsel for the state agreed to the waiver, but counsel for the defendant refused to do so and demanded the opening of the tales jury box in his presence. The trial judge then ordered the clerk of court to produce the tales jury box in open court. When the clerk of court as directed produced the locked and sealed tales jury box in open court, the trial judge ordered him to open the box and draw therefrom in open court and in the presence of the defendant and his counsel fifty slips containing the names and addresses of the tales jurors. As each slip was drawn from the box by the clerk of court it was handed to

the chief deputy clerk. Both the clerk and his chief deputy announced the numerical order of the slips as they were drawn from the box until the full complement of fifty names had been drawn, when the box was relocked.

During the course of the drawing, counsel for defendant demanded that he be permitted to examine each slip as it was removed from the box. The trial judge refused to accede to counsel's demand, informing him that immediately upon the completion of the drawing and the preparation of the list of the names drawn he, as well as counsel for the state, would be furnished with a copy of the list as prepared by the clerk, and that the court would allow him all the time he required to inspect the list and familiarize himself with the names appearing thereon before the resumption of the impanelling the jury from the names remaining on the regular venire. To all of which counsel for defendant objected and reserved a bill.

After the drawing of the fifty names had been completed, the court recessed in order to give the clerk of court an opportunity to prepare the list of tales jurors in his office. The list of the tales jurors was actually compiled and typed by the chief deputy clerk in the clerk's office which is located just back of the court room. The list was prepared from the slips drawn from the tales jury box. After its completion the list was checked against the slips by the deputy clerk in the presence of the trial judge and it was also compared with the summonses for service. The list and the slips were then brought into open court, the slips being deposited by the trial judge in an envelope for future use, and copies of the list were handed to both counsel for defendant and counsel for the state. Counsel for defendant then objected to the list on the ground that it was prepared outside the court room and outside the presence of defendant and his counsel. The objection was overruled and a bill was reserved.

After a recess of about a half an hour, counsel for defendant announced he was ready to proceed, and the impanelling of the jury from the regular venire was resumed. When the regular venire was exhausted with only two jurors chosen, the court recessed for about two hours to give the tales jurors who had been summoned an opportunity to appear. Upon resuming the trial, the impanelling of the jury was proceeded with from the tales jurors whose names had been drawn from the tales jury box. When the tales jurors list was exhausted without completing the jury, the trial judge ordered the tales jury box reopened and that forty additional names be drawn therefrom. A list containing the names and addresses of these forty additional tales jurors was prepared and copies thereof were furnished to counsel for the state and counsel for the defendant respectively. All the time required was given counsel to examine the list and familiarize themselves with the names of the tales jurors appearing thereon.

The law governing the selection, drawing, summoning and qualifications of tales jurors is set forth in Article 186 of the

Code of Criminal Procedure. The pertinent provisions of the article are as follows:

"If on the trial of any criminal case, the regular venire is exhausted, or it appears that it will be exhausted, before the selection of a jury therein, the court at its discretion·may instruct the clerk to open such tales jury box and draw therefrom such number of tales jurors as in its judgment may be necessary to serve on said case, and it shall be the duty of the sheriff to forthwith summon such tales jurors so summoned to report immediately for jury service in said court in said case."

Further on in the codal article is another provision reading as follows:

"All tales jurors shall possess the same qualifications as provided for regular jurors, but no publication of the tales jury list shall be necessary, but a copy of the same as drawn by the Clerk shall be furnished to the State and to the defense before the trial shall proceed."

▇ The procedure followed in the drawing of the tales jurors appears to be that provided by Article 186 of the Code of Criminal Procedure. The article expressly provides that: "The court at its discretion may instruct the clerk to open such tales jury box and draw therefrom such number of tales jurors as in his judgment may be necessary to serve on said case * * * but a copy of the same as drawn by the Clerk, shall be furnished to the State and to the defense before the trial shall proceed." The codal article does not provide that the defendant or his counsel

shall have the right to examine the slips drawn from the box by the clerk. All that it provides is that the clerk shall make a list of the tales jurors drawn from the box and that a copy of the list shall be furnished the state and the defense before the trial shall proceed. That is what was done in this case. The rights of the defendant were sufficiently protected. The tales jury box was brought into open court where it was unlocked and unsealed and the slips containing the names of the tales jurors were drawn therefrom by the clerk. This was done in the presence of the defendant and his counsel. The clerk prepared a list of the names of the jurors drawn from the box. The trial judge, although not required by the statute to do so, checked and read the names with the clerk in order to ascertain the correctness of the list. As soon as the list was completed copies thereof were furnished the state and the defendant.

The entire panel of tales jurors was exhausted before the completion of the jury. If there had been any variance between the names on the slips and the names on the list the variance would have appeared during the examination on their voir dire of the fifty talesmen composing the panel. But no such variance developed. No challenge to the array or to any tales juror was offered at any time. In fact, the defendant never objected to the correctness of the list of the tales jurors furnished him; nor did he exhaust the peremptory challenges allowed him by law.

From all of which it is plain that defendant's complaints as set forth in his bills of

exception Nos. 1 and 2 are not well founded.

▮ Bill No. 3. During its presentation of the case, the state offered and filed in evidence two small kodak pictures of the deceased and the defendant standing together and nine medium sized photographs of the deceased taken in the undertaking parlor. When Miss Edith Terradeau was placed on the stand by the defendant, she was handed one of the small kodak pictures by counsel for defendant and asked to identify the parties shown thereon. The purpose was to have the witness identify, if she could, the deceased as the lady she had seen with the defendant the day before the homicide. Counsel for the state objected that the witness should be presented with all the pictures at one time, thereby affording her a fuller opportunity of identifying the deceased, if she could do so. The trial judge sustained the objection and the defendant reserved a bill to the ruling. The witness was then presented with all the pictures and, after viewing them under a magnifying glass, she testified that she could not identify the lady shown on the pictures as the one she had seen with the defendant the day preceding the homicide. In view of the inability of the witness to identify the deceased, the ruling of the trial judge was not prejudicial to the defendant, even if it were wrong as contended by the defendant.

Bill No. 4. The defendant pleaded insanity as of the time of the commission of the crime charged. This was his only defense. At defendant's instance a lunacy commission was appointed by the trial

judge. The commission, after an investigation, rendered a report that defendant was sane. On the trial of the case, a number of lay witnesses and two reputable physicians were placed on the stand by defendant on his plea of insanity. The state, in rebuttal, placed on the stand the experts appointed by the trial judge and whose written report showed that defendant was sane.

One of the experts, Dr. Phillips, was subjected to a searching cross examination with a view of destroying the value of the Commission's report before the jury, particularly so far as the findings of the Commission were opposed to the testimony of defendant's lay witnesses.

In his argument to the jury, counsel for the defense stressed defendant's plea of insanity as a defense to the crime charged. In the course of his argument counsel severely criticised the report of the lunacy commission and declared that no reliance should be placed on the Commission's findings. On the other hand, counsel argued to the jury that weight and value should be given to the testimony and opinions of defendant's lay witnesses. To lend force to his argument, counsel referred to the case of State v. Neu, 180 La. 545, 157 So. 105, and read therefrom the following extract, which was a part of the argument of the assistant district attorney in that case (page 574, No. 16, 157 So. page 114), viz.:

"It is the law, gentlemen of the jury, and the court will so instruct you, that lay witnesses have a right to testify to and express their opinion as to the sanity or insanity of a defendant on trial."

The district attorney, in his closing argument, replied to the argument of counsel for the defendant. The district attorney defended the acts and findings of the lunacy commission and argued for the weight and value that the jury should give to the findings of the commission and the testimony of the experts composing the commission as opposed to the testimony and opinions of the lay witnesses produced by the defendant. In answer to the extract read by counsel for the defendant from the case of State v. Neu, supra, the district attorney, using the same case, argued to the jury that even though lay witnesses were used in that case, the accused had been in an institution for mental diseases, and that a commission had been appointed in that case and its findings had been offered in evidence.

At that stage of the district attorney's argument counsel for the defendant requested that the court order the district attorney to read the entire opinion in the Neu Case to the jury, or that he be ordered to explain the qualifying circumstances of the defendant Neu being confined in a mental institution. The trial judge refused the request, to which refusal a bill of exception was taken.

The remarks of the district attorney were provoked by the remarks of the counsel for the defendant. They were purely argumentative in character. Counsel for defendant having relied on and quoted from the case of State v. Neu, supra, the district attorney used the same authority to refute what counsel for defendant had previously argued on the subject of insanity. Counsel for defendant had quoted only the part of the Neu Case that referred to the weight which should be given to the testimony of lay witnesses in cases of insanity. We see no reason why the district attorney should have been precluded from referring to the same case to explain the weight which should be given to the findings of the lunacy commission and the testimony of its members. The remarks of both counsel constituted a general argument for and against the plea of insanity relied on as a defense in the case.

The trial judge in his general charge instructed the jury that both expert and lay witnesses were permitted to express their opinions as to the mental condition of the defendant, but that the experts were not called into court for the purpose of deciding the case. That, on the contrary, the jurors themselves were the ones who, in law, must bear that responsibility. He also instructed the jury that the experts were to be considered merely as witnesses, and that the jury had the right to either accept or reject their testimony and opinions in the same manner and for the same reasons for which they might accept or reject the testimony and opinions of the lay witnesses, and to give such weight and credibility thereto as under the evidence they thought proper.

We find no reason for assuming that the instructions of the trial judge were not heeded by the jurors. No ground for reversal is exhibited by the bill.

Bill No. 5. This bill was taken to the refusal of the motion for a new trial.

The motion embraces twelve articles in which are set forth the alleged errors on which defendant's request for a new trial is founded.

The errors complained of in the first four articles of the motion have been disposed of in connection with the other bills of exception hereinabove reviewed.

Defendant's complaint as embodied in the fifth and sixth articles of the motion is, that he did not receive a fair trial because certain testimony given before the coroner's jury in the presence of a number of persons and certain facts published in the local press created a false impression and an unfavorable sentiment in the community and influenced the jury in arriving at its verdict.

█ If the defendant was of opinion and in possession of information that he could not obtain an impartial trial in the parish wherein the indictment was pending, either because of the articles published in the newspapers of the parish or the facts developed and made known at the coroner's inquest, his remedy was to apply for and obtain a change of venue before trial and not wait until after verdict and sentence before complaining of the alleged prejudice against him. State v. Vial, 153 La. 883, 96 So. 796; State v. Carricut, 157 La. 140, 102 So. 98.

The complaint embraced in the seventh article of the motion first assails the method used by the members of the lunacy commission in making their investigation and in arriving at their findings. No such attack was made on the report of the commission at the time it was filed in the office of the clerk of the district court. However, the findings of the commission were thoroughly gone into before the jury when the state in rebuttal placed the experts composing the commission on the witness stand. Both experts were submitted to a severe cross examination by counsel for the defendant.

█ In its final analysis, defendant's complaint involves only the weight to be given the findings and the testimony of the experts. That is a matter that was solely within the province of the jury to determine. The jurors were specifically instructed by the trial judge that the responsibility was on them and not on the experts to decide the question of defendant's sanity or insanity, and that in arriving at their decision they could give such weight to the findings and the testimony of the experts as they were entitled to receive.

The second ground of complaint embraced in this article of the motion, namely, that the report of the lunacy commission as soon as it was filed was made public by publications in the local press, thereby creating a sentiment in the community adverse to the defendant and prejudicing the defendant not only in the minds of the jurors who served on the case but also in the minds of the one hundred and odd prospective jurors who were questioned and excused because of previously formed opinions, which prevented defendant from receiving a fair and impartial trial, is fully covered in our discussion of defendant's

complaints contained in the fifth and sixth articles of his motion.

■ Defendant's contention that the publication of the report of the lunacy commission in the newspapers is contrary to the provisions of Article 267 of the Code of Criminal Procedure as amended by Act No. 136 of 1932 is untenable. We find nothing in the codal article or in the amendatory statute that prohibits a newspaper from publishing the findings of a lunacy commission after it has . been filed in the office of the clerk of court.

The eighth article of the motion complains that one of the deputy sheriffs in charge of the jury became so ·intoxicated that he could not properly discharge his duties and that he made statements to outsiders as to what the jurors were discussing and as to what action they would take in the case.

■ The record discloses that there is no foundation for defendant's complaint. The jury was constantly in charge of two deputies. On one occasion one of the deputies had a few drinks outside the presence of the jury, while the jury was in charge of the other deputy. It is clear that the misconduct of the deputy cannot be charged to the jury. Whatever drinking was done by the deputy outside the presence of the jury could not and did not affect the verdict.

■ The charge that the deputy made statements to outsiders as to the conduct of the jury and as to the action they would take in the case is not supported by any evidence whatever. No such statements were made, the allegation thereof being purely an assumption on the part of the defense.

In the ninth article of the motion, defendant alleges that throughout his trial he was ill to such an extent as to require constant taking of sedatives and numerous recesses during which he could secure the attendance of physicians; all of which tended to prejudice his case in the minds of the jurors.

The trial judge, in his per curiam, shows that the defendant during the trial was naturally nervous and that he suffered from a nervous headache. On each occasion defendant's counsel requested a recess to afford him rest and medical relief, the request was granted, but only after the jury was retired, so that the jurors might not know the purpose for which the recess was being taken. Defendant at no time sought a continuance because of his inability to proceed with the trial. Defendant was fully able to undergo the strain of the trial during the entire time, save for the requested recesses, and he constantly advised with and aided his counsel in the examination of all the witnesses. We find no merit in defendant's complaint.

■ The tenth article of the motion is based on the fact that Dr. E. N. Landry, the coroner of the parish, was called by the deputy sheriff at night to come to the jurors' room in the hotel to attend to a sick juror. Defendant charges that this amounted to a separation of the jury and the presence of an outsider in the jury room.

The record discloses that the coroner attended only to the sick juror. He did not mingle or converse with the other jurors who were present in the room. After attending to the sick juror, the coroner left the jury room. All of which occurred in the presence of the deputy sheriffs who were in charge of the jury. The next morning the sick juror had fully recovered.

These circumstances do not present a case of separation of the jurors. On the contrary, they show that no separation of the jurors took place. The coroner was not an outsider in the sense contemplated and reprobated by law, and his attendance on the sick juror could not properly speaking be considered as constituting a separation of the jurors.

In the eleventh article of the motion defendant complains that the verdict of the jury was contrary to the law and the evidence. This ground of complaint presents nothing for this court to review.

In the twelfth article of the motion, defendant alleges that the unfavorable sentiment existing against him in the community immediately after the commission of the homicide has modified and abated since his conviction, and, hence, that the ends of justice would be served by granting him a new trial. There is nothing in these allegations of defendant that would justify the court to grant him a new trial.

Our conclusion is that defendant's motion for a new trial was properly refused. There is no reversible error exhibited by the record.

For the reasons assigned, the conviction and sentence appealed from are affirmed.

ODOM, J., takes no part, not having heard the argument.

FOURNET, J., takes no part.

PONDER, J., concurs.