HIGGINS, Justice.
 

 The accused was indicted for the murder of Mrs. Evelyn Allen Crawford, found guilty as charged by the jury, and sentenced to death. On appeal to this Court the verdict and the sentence were affirmed. State v. Migues, 191 La. 55, 184 So. 540. He applied to the State Board of Pardons for a commutation of sentence and his application was rejected. On his motion, the trial judge fixed a rule to determine his present mental condition, and after a hearing on the merits, the defendant was held to be legally sane. He applied to this Court for writs of certiorari and mandamus. He granted a rule nisi and the matter is now before us for review.
 

 
 *1084
 
 The law is clehr that, if the defendant is presently insane, he cannot be legally executed. State v. Cannon, 185 La. 395, 169 So. 446, State v. Burnham, 162 La. 737, 111 So. 79, and State v. Brodes, 156 La. 428, 100 So. 610, Id., 157 La. 162, 102 So. 190.
 

 The respondent judge, in response to the order of this Court, filed the following return : . ,
 

 “The sole question presented here is, that, since the trial, conviction, and sentence of relator has he become insane and is now in this present condition, and thus not answerable to the sentence imposed.
 

 “Prior to the trial of relator, his attorney moved for and obtained an order of the trial court for an appointment of a lunacy commission, asserting that the principal defense which would be made' by relator would be ‘insanity at the time of the commission of the crime.’ The Court, thereupon, appointed a commission composed of Drs. Phillips and Frieman, the former superintendent, and the latter, chief psychiatrist, of the' Central Louisiana State Hospital for the Insane. These two specialists observed, interrogated and examined relator, using all known standard methods of their profession, on three separate occasions. They rendered a report that relator was sane. They likewise testified as State witnesses, on the trial and, re-asserted their findings that relator was sane. The defense, in opposition to this report of the commission,- placed two reputable physicians and a large number of lay witnesses on the stand at an end'to sustain their'sole defense of insanity. I may state that relator’s entire historical back ground, from every conceivable angle, was presented to the jury by the defense. The jury however, rendered a verdict of ‘guilty as charged.’
 

 “At the outset of this inquiry, we are confronted with the presumption of law that every man is presumed to be sane until the contrary is proven by a preponderance of the evidence. Upon the examination of the testimony heard, and in the record, I find one expert on mental diseases taking the position that relator is presently insane. On the other hand, I have the testimony of two experts on mental diseases, of equal skill and integrity, who were members of the commission appointed by the Court, stating positively and absolutely that relator is presently sane.
 

 “Dr. H. Randolph Unsworth, the expert testifying for relator; examined and observed him on one occasion. In a preliminary report to counsel for relator, he states, that relator has ‘undergone a physical and mental deterioration.’ It is possible to subscribe to that assertion, when considering the fact that relator has been under confinement for over two years, coupled with the realization and anticipation of the consequences attending his confinement. It is well accepted that long confinement under such distressing circumstances is sufficient to bring about a deterioration in the physical appearance and mental make-up of an individual. That, however, does not, of itself, establish present insanity, unless' coupled with other evidence.
 

 
 *1086
 
 “In reviewing the testimony of Dr. Unsworth, after declaring that relator showed evidence of being a psychopathic personality ; having evidence and symptoms of what is commonly known as dementia precox, he places relator, for clearer identity, in the category of an ‘epileptic equivalent.’ He testifies that from an investigation of the life history of relator, that he learned that the latter had one or two convulsive seizures at the age of twelve years. There is no explanation for these convulsions, whether it be from boyhood illness or otherwise. Yet, he admits that relator has never experienced any other convulsion since that time.
 

 “His conclusions that relator is insane, is predicated upon reasons and historical incidents long predating the commission of the crime. He does not testify, nor does he contend, that the insanity of relator has arisen since the trial of the case. The Court specifically questioned Dr. Unsworth, and the two physicians, testifying for relator, as to whether the reasons given by them in support of the alleged insanity of relator was of late origin, or had existed long prior to the commission of the crime. Each responded that relator had been insane, and showed the symptoms of insanity upon which .they rely at this hearing, many years prior to the commission of the crime. They assign no reason, nor do they testify to any sign or symptom of insanity which has arisen since the verdict of the jury. In accepting their conclusions your respondent would be setting at naught the verdict of the jury on the question of insanity as passed upon by the jury on the trial of the case. As previously stated, the question of relator’s sanity at the time of the trial and at the time of the commission of the crime was thoroughly considered by the jury and passed upon in its verdict.
 

 “In State ex rel. Paine v. Judge,
 
 49
 
 La. Ann. 1500, 22 So. 738, the Court there declared that ‘all allegations setting forth defendant’s mental condition, having reference to a date prior to conviction, do not present an issue for decision.’ The Court declaring that the verdict of the jury was conclusive as to "all matters of facC embraced by it.
 

 “On cross examination, Dr. Unsworth was propounded the following question:
 

 “‘Q. Do you believe that this accused knows the difference between right and wrong, and that he appreciates the natural consequences of his actions?’
 

 “To which he replied:
 

 “ ‘A. Yes, I do. How profoundly he could carry out the differential, I don’t know.’
 

 “From the above answer, it is evident, therefore, that relator, in law, is sane. Though Dr. Unsworth may attempt to construct around relator a certain psychosis, this he does, as he admits, in so far as the profession of medicine is concerned. He concedes that his conclusions are true from a standpoint of medicine, but are repugnant to what the law defines as sanity.' (See: Ev. p. 18). It is universally accepted, that one who knows the difference between right and wrong, and appreciates the consequences of his acts, is sane.
 

 
 *1088
 
 “The testimony of Dr. E. N. Landry and Dr. R. F. DeRouen can add no greater strength to that of Dr. Unsworth. Neither of said Doctors are experts in mental diseases, being however, reputable physicians. Dr. DeRouen observed relator for an hour on the date of this hearing, this being his sole and only examination of relator. Their conclusions as to the insanity of relator is predicated upon signs and symptoms long existing prior to the commission of the crime, as in the case of Dr. Unsworth. The Court distinctly recalls the testimony of Dr. Landry on the trial of relator for the crime charged, and at his appearance before the Board of Pardons. On both occasions, he testified that though relator was suffering from an over abundance of ego, showing tendencies of being a psychopathic individual, he knew the difference between right and wrong, and appreciated the consequences of his acts. A similar statement was made by the Doctor in the Court’s presence, at the sitting of the commission whose report is now before the Court.
 

 “Examining the report of Drs. Otis and Connely it will be seen that they examined and observed relator on two separate occasions. They likewise read the report of the first commission appointed by this Court for the trial. They were presented and examined witnesses on behalf of relator and likewise conferred with Drs. Landry and Unsworth. Their lengthy report reviewing their actions, as members of the commission, is a part of the record, and a reading thereof shows a complete and thorough inquiry into the present mental status of relator. They state positively that relator is presently sane. These two Doctors were present in Court during this hearing; heard the
 
 testimony
 
 presented on behalf of relator; and they testified that they had no reason to revise or modify their opinion contained in their report and that they were of the same opinion and view that relator was sane.
 

 “From the whole, I must conclude that relator is presently sane. In my opinion, taking the testimony of the witnesses for relator alone, it is wholly insufficient to overcome the legal presumption of sanity, reinforced, as it is, by the testimony and report of the medical experts forming the lunacy commission that relator is presently sane.”
 

 We have carefully reviewed and analyzed the testimony of the medical experts contained in the record on the subject presented for consideration and find that it amply supports the conclusions reached by our learned brother below in adjudging the defendant sane. The principal medical expert, Dr. H. Randolph Unsworth, who testified in behalf of the defendant, on cross examination admitted that the prisoner was capable of distinguishing right from wrong and that his opinion that he was presently insane was from a medical viewpoint rather than from a legal aspect. The other two doctors who testified that the accused was presently insane do not specialize on the subject of mental disorders. The two experts, Dr. Edmond Connelly and Dr. Walter J. Otis, who have devoted many years to the special study of mental diseases, and who were appointed by the
 
 *1090
 
 trial court to examine the accused and make a report as to his sanity, unequivocally stated in their reports and testimony that he was presently sane. Therefore, as Dr. Unsworth conceded that his opinion was given from a medical viewpoint rather than from a legal one, the preponderance of the evidence confirms the trial judge’s opinion that the accused is presently sane.
 

 For the reasons assigned, the defendant’s application for writs of certiorari and mandamus is denied.
 

 O’NIELL, C. J.,
 

 is of the opinion that the only question before the court now is whether the relator is entitled to an appeal from the decree pronouncing him sane.