51 So.2d 305

STATE v. FULLER.

No. 40139.

Feb. 12, 1951.

W. T. Holloway, Jonesboro, for defendant-appellant.

Bolivar E. Kemp, Jr., Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Fred L. Jackson, Dist. Atty., Homer, Wayne Stovall, Asst. Dist. Atty., Jonesboro, for appellee.

LE BLANC, Justice.

The defendant, Howard Fuller, was indicted by the Grand Jury of Jackson Parish, for the crime of manslaughter, the indictment charging that he had, on August 7, 1950, unlawfully killed Wesley Fuller. The deceased and the accused were brothers. Defendant was tried and convicted in the lower court and was there sentenced to serve eight years at hard labor in the State Penitentiary. He vainly attempted to obtain a new trial in the District Court and then appealed to this Court.

The facts relating to the killing, as stated in a per curiam of the trial judge, are briefly these: The accused lived with his father at the latter's home in Jackson Parish. The accused and his family ran the home, the father maintaining a room and taking his meals with them. The deceased lived in West Monroe. A day or so before the killing, the father went to visit the son at West Monroe and while there discovered that he had left his wallet under the pillow in his room. He decided to go back to get it. His son, Wesley, took him back in his car and on arriving at the home an argument ensued between the two brothers, while they were on the porch. The accused went into the house, secured his shotgun and then returned to the porch, shot and killed his brother.

The witnesses to the shooting were the defendant, his wife, his eighteen year old son, his eight or nine year old daughter and his father. There was conflict in the testimony as to where the deceased was and what he was doing at the time of

the shooting; the defendant claimed that he lunged at him and that he shot in self-defense, while the father's testimony was that defendant shot the deceased while he was sitting in a chair. The testimony of the coroner and that of certain officers regarding blood stains on the floor tended to corroborate the father's testimony as to the place decedent occupied on the porch at the moment he was shot.

Bill of Exception No. 1 was reserved to the ruling of the trial judge sustaining an objection by the District Attorney to a question propounded to the witness, Garland Fuller, eighteen year old son of the accused. The question was: "Has your grandfather always been able to remember things since you have been there?"

Counsel for defendant disclaimed any intention of trying to show insanity but claimed that he was merely trying to prove that the grandfather, who had testified as a witness for the State, had a bad memory. The trial judge ruled that he did not consider the witness, an eighth grade student at school, qualified or competent to testify on the matter inquired about, and if, by the question, it was intended to elicit impeaching testimony or testimony testing the credibility of the grandfather or his competency as a witness, the proper foundation had not been laid. The ruling of the trial judge was correct. His per curiam shows that when the grandfather was on the witness stand he

was subjected to a vigorous cross-examination by counsel for defense and certainly counsel had the opportunity then of testing his memory and of laying the foundation to impeach his testimony if it became necessary, and this he did not do.

Bill of Exception No. 2 was reserved to the refusal of the trial judge to give twenty-six special charges requested by counsel for the defendant.

The charge given by the district judge to the jury was in writing and is made a part of the transcript that is before this Court. It is most comprehensive and fully covers the law governing the issues in the case and especially the law pertinent to a plea of self defense. It substantially included all the specific charges requested. To have added them to the Judge's instructions would only have served to confuse the jury. We, accordingly, hold that the district judge was justified in refusing to give them.

Bill of Exception No. 3 was reserved to the refusal of the trial judge to grant a new trial. The motion for a new trial was based, among others, on the ground that after the trial and after the verdict had been rendered, information reached counsel for defendant to the effect that the jury, during the time the case was being tried, was not separated from the public at large but that two of the jurors had been permitted to leave the others and had engaged in a conversation with

a person who was not a juror or an officer of the Court.

The facts relating to this occurrence are these: The selection of the jury was completed just prior to the noon recess hour of court. Before announcing the recess the judge gave them the usual instructions about remaining together in charge of the sheriff and he particularly instructed them not to discuss the case among themselves or permit any one to discuss it with them. The jury was then taken by three of the sheriff's deputies for lunch to a cafe which was the most convenient and accessible for them. On account of the crowded condition at the time it was found impossible to seat all twelve jurors at the same table and two of them sat at a table in a booth some twelve to fifteen feet away from the others. While seated at this table one of the two conversed with another party, not a juror, but who later, it was shown, happened to be a member of the Grand Jury which had returned the indictment against the accused.

Testimony taken on the motion for a new trial revealed positively that there was no misconduct on the part of either of these two jurors and that the conversation had by one of them with the other parties at the table had no reference whatever to the case. The two jurors did not know that one of the other parties had been a member of the Grand Jury and he, on the other hand, did not know that they were on the jury that was then sitting on the case.

 We are of the opinion that there was no separation of the jury such as is contemplated under Article 394 of the Code of Criminal Law and Procedure in order to vitiate a verdict. The circumstances which presented themselves at the cafe made it necessary, unless the trial of the case was to be delayed, for two of the jurors to have their lunch at separate tables, and unless by reason of this, some misconduct on the part of one or the other appeared, the temporary separation could have no effect on the verdict. There must appear prejudice to some of his substantial rights in order for this Court to grant the accused a new trial. Article 557 of the Code of Criminal Law & Procedure. No such prejudice is shown on the complaints urged in this bill of exception.

Bill of Exception No. 4 was taken when the trial judge heard testimony of the jurors on the trial of the motion for a new trial relating to the conversation that took place in the cafe which was the basis of Bill of Exception No. 3.

 Our impression is that in argument before this Court, counsel for defendant did not attach much importance to this bill, but nevertheless we find no merit in it because under Article 470 of the Code of Criminal Law and Procedure, a juror is a competent witness "to rebut any attack

upon the regularity of the conduct or of the findings of the body of which he is or was a member."

For the reasons assigned, the sentence and conviction appealed from are affirmed.