III So.2d 778

**STATE of Louisiana**

**v.**

**Brodie Byron DAVIS.**

**No. 44508.**

April 27, 1959.

Rehearing Denied June 1, 1959.

Billye L. Adams, Lea S. Thompson, Monroe, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Albin P. Lassiter, Dist. Atty., Monroe, for appellee.

PONDER, Justice.

The defendant was indicted, tried, convicted, and sentenced to be electrocuted for the murder of one Isaac Charlie Baker. During the course of the trial, eight bills of exception were taken to the rulings of the trial judge.

Bills of Exception Nos. 1 to 5 inclusive, are based on the same ground. These bills were taken to the ruling of the trial judge rejecting the defendant's objection to the qualification of jurors based on the ground that the prospective jurors had read articles in two newspapers and that the information derived from these articles placed the defendant's character at issue before any evidence was introduced to this effect. The defendant does not contend that the challenged jurors were disqualified because they had a fixed opinion as to the guilt or innocence of the accused. The defendant takes the position that these jurors were prejudiced against the defendant's general character by having read these articles in the newspapers and that, therefore, they were not impartial jurors.

The two articles heretofore referred to appeared in the Monroe News Star on November 17, 1958 and in the Monroe Morning World on November 18, 1958 and read as follows:

Monroe News-Star dated November 17, 1958:

"Dist. Atty. Albin P. Lassiter stated this morning he would ask the death penalty for the burly six-foot, 200-pound convict who was indicted in June for the murder of the aged retired farmer whose beaten and bound body was found floating in the flood waters of Ouachita River here last May 19."

Monroe Morning World dated November 18, 1958:

"Lassiter announced yesterday that he would seek the death penalty for the husky, six-foot 220-pound Davis who was an ex-convict on parole from

the Louisiana State Penitentiary to Texas at the time the aged Baker disappeared from his riverfront home 'back of the levee' in West Monroe last May 15."

The evidence attached to these bills of exception shows the jurors testified that they would disregard what they had read, that they had no fixed opinion, and had not accepted what they had read in the newspaper articles as facts. They testified that they would be governed entirely by the evidence produced on the trial of the case.

The evidence shows that two of these challenged jurors were rejected by the state and two of the others were rejected by the defendant. Only one of the challenged jurors served in the case. At the time that these jurors were challenged the defendant had not exhausted his peremptory challenges.

The defendant does not contend that his character was attacked by the state during the course of the trial or that any evidence was introduced by the state as to his character. Therefore, the authorities relied on by him to the effect that the state is prevented from attacking the character of the accused unless and until the accused puts his character at issue, are not applicable. Moreover, counsel for the defendant in his argument to this Court on this appeal admitted that the only evidence as to the defendant's character adduced on the trial of this case was brought out by him on cross-examination of a state witness for the purpose of showing that the defendant· was never heretofore charged with a crime of violence.

We know of no rule of law which disqualifies a prospective juror merely because he read newspaper articles relating to a defendant. The test is whether or not the prospective juror would be influenced by the statements contained in these newspaper articles. All five of these challenged jurors positively stated that they would disregard these newspaper articles, they had no fixed opinion in the case, and would be guided entirely by the evidence adduced at the trial.

Bills of Exception Nos. 6 and 7 are not urged on this appeal; however, out of due precaution we will pass on these bills because of the seriousness of the penalty imposed on the defendant. The basis of these bills is to the effect that the witnesses did not give the complete conversation, or story, or circumstances, surrounding the alleged admission and/or confession. The trial judge in his per curiam states that the witnesses did give the complete conversations and surrounding circumstances in regard to the admission or confession. Moreover, it is well settled that in a prosecution for murder, the testimony regarding oral confessions or admissions need not be verbatim but must be given in its entirety and substance. State v. Goins, 232 La. 238,

94 So.2d 244 and State v. Domino, 234 La. 950, 102 So.2d 227.

Bill of Exception No. 8 was taken to the overruling of a motion for a new trial. It is alleged in the motion that the jury was allowed to separate in that they were quartered in five different rooms in a hotel wherein television sets were in operation and the jurors were permitted to communicate with other persons by telephone.

The deputy sheriff in charge of the jury testified that he personally made all outgoing telephone calls and received all incoming calls and that he kept a complete record of these calls. The manager of the hotel testified that all the phones in these rooms.were plugged except the one in the room occupied by the deputy sheriff. The evidence shows that although the television sets were used by the jurors, they were not allowed to listen to any news broadcasts or any comments made thereon relating to the case.

It appears from the per curiam of the trial judge, which is not challenged by counsel for the defendant, that the suite of rooms in which the jurors were quartered are located at one end of the hotel and that the only access to these rooms could be gained by coming through the room occupied by the deputy sheriff, in charge of the jury, who kept the key to this room. All doors were open between these rooms and the jurors had access to walk freely

through this suite of rooms but they had no means of outside contact except through the locked room wherein the deputy sheriff was quartered. The testimony of the manager of the hotel is to the effect that this suite of rooms is locked off by a partition in the hall and that the only access to these rooms is through the room that was occupied by the deputy sheriff. He also testified that this suite of rooms is on the eighth floor of the hotel.

There is absolutely no evidence whatever that the jurors were subjected to outside contact. In fact, it would be practically impossible for these jurors, locked in a separate suite on the eighth floor of a hotel, to be contacted from the outside.

Louisiana Statutes Annotated—Revised Statutes 15:394 provides:

"From the moment of the acceptance of any juror until the rendition of verdict or the entry of a mistrial, as the case may be, the jurors shall be kept together under the charge of an officer in such a way as to be secluded from all outside communication; * * *."

The purpose of this section is to keep the jurors from any outside influence. The separation contemplated is separation from the public or outside contact. State v. Migues, 191 La. 55, 184 So. 540; State v. Sharbino, 194 La. 709, 194 So. 756; State v. Fuller, 218 La. 872, 51 So.2d 305.

Since there was no separation of jurors, it is unnecessary to inquire into defendant's contention that misconduct and abuse is presumed when there has been an actual separation of the jury.

For the reasons assigned, the conviction and sentence are affirmed.