322 So.2d 197 (1975)
STATE of Louisiana, Appellee,
v.
Edward L. SMITH, Appellant.
No. 56369.
Supreme Court of Louisiana.
November 3, 1975.
Rehearing Denied December 5, 1975.
*199 Robert P. McLeod, Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Donald K. Carroll, Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant Smith was convicted of first degree murder, La.R.S. 14:30 (1973), and sentenced to death. On this appeal, he relies upon nine assignments of error.[1] Finding no error, we affirm.
Context Facts
The victim Terry and a companion, Mary K., were sleeping in a camper parked on a country road. A man came with a pistol, ordered Mary K. out of the cab *200 where she was sleeping, and went to the back of the camper, where he shot Terry in the left chest and killed him. (He then took Mary K. in his car for several miles to a field, where he raped her. She escaped from him and immediately reported the rape and murder.)
Based on Mary K.'s description, several suspects were shown to her that day in a physical line-up. She stated that none of them was the assailant. About four days later, she identified the present defendant as the assailant, first on the basis of a photographic identification (picking him out from several photographs of similar appearing men) and then on the basis of a physical line-up. See Assignment 1. A pistol seized under a search warrant from the accused's home was, on the basis of ballistic tests, found to be the weapon which had fired the shot which killed Terry. See Assignment 2.
In the present case, the defendant is tried for the murder of Terry. The trial for murder was conducted with minimal reference to the rape. The trial court and the prosecutor, as well as the defense counsel who conducted a vigorous and resourceful defense, should be especially commended for the conduct of a thorough, fair, and dispassionate trial.
Assignments of Error
The most substantial issues are raised by Assignment 6 (relating to a denial of a mistrial, when the defendant was brought into the courtroom handcuffed in the presence of the prospective jurors on the day the trial commenced) and by Assignment 8 (relating to the violation of a sequestration order by a juror after he was selected to serve on the petit jury).
Assignment 6 (Defendant handcuffed in the presence of prospective jurors)
On the first day of the trial, the defendant Smith was brought into the courtroom. He was wearing a suit. His hands were handcuffed and attached to a band around his waist, which was effectively hidden by his coat. He walked in with hands held close together in front. He sat down, with his hands in his lap. As he sat down, a noise was made by the chain which hung beneath the coat.
The prospective jurors were removed, at which time the court heard and ruled on several preliminary motions. At this time, the court also took evidence on the motion for mistrial based upon the defendant's being brought in handcuffed. The handcuffs were removed, since no reason based on his in-court or other conduct was shown for restraint of the defendant.
The evidence accepted by the trial court shows that, due to the defendant's clothing, the handcuffs and waist shackles were not noticeable.
Although obstreperous conduct may permit a defendant in a criminal trial to be shackled, Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), State v. Brewer, 301 So.2d 630 (La.1974), ordinarily reversible error may be committed, as the denial of a fair trial, if an accused is tried clothed in prison garb or shackled or otherwise exhibited to the trial jury under circumstances which tend to deprive him of his presumption of his innocence. State v. Brewer, cited above; State v. Daniel, 297 So.2d 417 (La.1974); State v. Tennant, 262 La. 941, 265 So.2d 230 (1972); State v. Spencer, 257 La. 672, 243 So.2d 793 (1971).
We find no error here in the denial of a mistrial or because of this inadvertent, brief, and barely noticeable incident. As the trial judge stated: "When I observed the defendant in the courtroom, he was neatly dressed and wore a long sleeved suit coat or jacket. The coat and sleeves concealed the existence of the handcuffs until they were called to my attention. No prospective juror on voir dire examination testified that he saw the cuffs on defendant or that he was prejudiced in any way by the incident."
*201 Assignment 8 (Violation of sequestration by a juror)
La.C.Cr.P. art. 791 provides: "* * * In capital cases, after each juror is sworn he shall be sequestered. * * *"
The purpose of the sequestration is to insulate the jurors from outside influence or the possibility thereof, even unconscious; and, in capital cases especially, the sequestration is strictly enforced, so that, upon a separation of a juror after he is sworn, reversible error will be presumed. State v. Luquette, 275 So.2d 396 (La. 1973); State v. Craighead, 114 La. 84, 38 So. 28 (1905); 1 Marr's Criminal Jurisprudence of Louisiana, Section 466 (2d ed. 1923).
Nevertheless, where circumstances are such as to reasonably overcome the presumption of prejudice and where it affirmatively appears that no prejudice to the accused can have resulted, the presumption may be rebutted, so that the mere separation of a juror briefly may be held to be insufficient ground to set aside a verdict. State v. Sharbino, 194 La. 709, 194 So. 756 (1940); State v. Craighead, cited above; Marr's Criminal Jurisprudence, cited above. See also: State v. Davis, 237 La. 577, 111 So. 2d 778 (1959); State v. Fuller, 218 La. 872, 51 So.2d 305 (1951); 5 Wharton's Criminal Law and Procedure, Section 2106 (Anderson ed., 1957).
The trial court found adequately rebutted the presumption of reversible prejudice arising from this brief separation of a juror, which occurred before any evidence was taken. Its ruling was correct, for the reasons stated by its per curiam:
"As each juror was selected in this case, he was sworn and sequestered. At that time each juror was told what being sequestered meantthat is, that they must remain together under the supervision of the officer in charge, that they must not discuss the case in any manner or with anyone, and that they must not receive any communication in any form and from any source concerning the case.
"These same instructions were repeated to the jury each time Court recessed and each time the jury left the jury box.
"Here, before the selection of the jury was completed, Juror Blackmon was accepted, sworn and sequestered. Court recessed for the evening meal and the jurors that had been accepted were again instructed as to being sequestered. However, Juror Blackmon separated from the other jurors for a few minutes and went to his home a few blocks from the court house. There are two elevators in the Richland Parish court house, neither being large enough to accommodate the jury and officer. Therefore, in transporting the jurors, they were divided, some going with one deputy, and the others going with another deputy. When the jurors got to the ground floor of the court house, Juror Blackmon was missed and within a few minutes he was found at his home a few blocks from the court house, after he had just arrived there.
"This incident was not known to the court until after the trial was completed and the defendant filed a motion for a new trial alleging the separation of jurors. Had the incident been made known to the court, the juror could have been easily replaced, in fact, an alternative juror was selected and sat with the jury during the entire trial and then dismissed and not used.
"Juror Blackmon testified on the motion for new trial that he left the other jurors only a few minutes, did not speak to anyone on the street before reaching his home, and had just arrived at home and spoken to his wife and relatives when [within five minutes] officers came and picked him up. He testified that he discussed this case with no one and received no communications concerning the case. Therefore, no prejudice resulted to defendant."
*202 Other Assignments of Error
The other assignments present issues which were correctly decided under clearly applicable legal principles or clearly appropriate findings of facts.
Assignment 1 (Denial of motion to suppress identification testimony):
The state's case shows that, following the murder and rape, the sheriff's office secured a description of the perpetrator from Mary K. About five days later, at about 9:30 in the morning, at her motel room she was shown five photographs, in the record, of persons similar to her described appearance of the murderer. The group included a photograph of the present accused, whom the sheriff's office had determined was a suspect for reasons not reflected by the record.
Mary K. immediately picked out the defendant's photo as that of her attacker, with whom she had spent some time and had had full opportunity to observe. The sheriff shuffled the photographs of persons of generally similar appearance, and she immediately picked out the accused's photograph again.
Based on that information, the sheriff's office issued word to pick up the defendant for questioning and in order for the accused to be viewed by Mary K. at a physical line-up.
The accused was contacted at his work at about 3:00 p. m. He was asked to come to the courthouse for a line-up. At the courthouse, after a voluntary waiver of Miranda rights, he appeared in a line-up at about 5:00 p. m. with four other men of similar appearance and build (not the same as in the photographs). Again, Mary K. immediately identified him as her attacker and as the man who had killed the decedent. Also, at the trial (subject to the objection that her identification was the product of impermissibly suggestive procedures) she again positively identified the accused as the murderer, on the basis of her full opportunity to observe him over a period of time.
The chief argument made by the defense is that the line-up identification was the result of an illegal arrest, so that as the fruit thereof it is inadmissible. See Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L. Ed.2d 416 (1975). This argument is based upon the contention that the photographic identification by Mary K. of the accused at 9:00 a. m. did not take place (since she denied it, see below), so that the arrest at 3:00 p. m. solely based on this identification was illegal.
We pretermit considering that any primary taint of illegality may have been purged so as not to invalidate the line-up identification. Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972). For, even aside from this, the trial court did not err in finding that the initial detention of the accused at 3:00 p. m. was properly based upon the probable cause represented by Mary K.'s photographic identification at 9:30 a. m. of him as the murderer.
The contention that the photographic identification did not take place is based on the testimony of Mary K. at the preliminary hearing. She denied that she had been shown the photographs at the motel, but insisted that she had been shown them twice at the courthouse and had not selected the defendant from among them but, instead, from seeing a photograph on the wall at the courthouse of another parish. However, this witness likewise admitted she was confused and in a state of shock during the days immediately following the murder and that "nobody brought me no pictures out there that I can remember. Like I said, I was pretty upset a couple of days." Tr. 144.
On the other hand, the deputy positively testified of her identification by the photographs. Other corroborating circumstances support the credibility of his accountthe testimony of other witnesses *203 that he left with the group of pictures, the pictures themselves (which had been selected and reproduced for the interview at the motel), and the testimony of other witnesses as to what they did after the deputy returned with the report of Mary K.'s photographic identification. We also note that Mary K.'s testimony, although clear and unwavering as to the main events of the evening, showed confusion and inaccuracy as to many details of the minor incidents before and after the murder.
We are unable to find factual error in the trial court's holding that, prior to the detention of the defendant, Mary K. had made a photographic identification of him from among a group of photographs of similar-appearing men chosen on the basis of her prior description of the murderer immediately after it had occurred, despite her failure to recollect it when questioned at the preliminary examination.
In addition, the evidence reflects no impermissibly suggestive identification procedures. It further reflects a basis for her identification of the accused entirely independent of the photographic and line-up identification procedures.
The motion to suppress Mary K.'s identification of the defendant was properly denied.
Assignment 2 (Denial of motion to suppress physical evidence):
The trial judge correctly held that the affidavit by a deputy sheriff, upon which the search warrant was issued (J-2), was sufficient to support a lawful search of the accused's residence. As a result of that search, a pistol (S-2) was introduced into evidence, which (ballistics tests indicated) had fired the slug which killed the decedent. As a basis for the search, the affidavit stated that Mary K. "has made positive identification" of the accused as the killer of the decedent and that he had "in his possession at the time of the murder two different pistols."
As earlier noted, Mary K. was an eyewitness of the murder. (Further, this circumstance may reasonably be implied from the wording of the affidavit.) The statement of an eyewitness as to certain facts that the accused was the killer of the victim and that he possessed two pistols at the time of the murderis not a mere conclusory allegation by the affiant. It adequately establishes a factual basis of reliability both for the information asserted and for the informant's credibility and possession of the information given to the affiant. See State v. Paciera, 290 So.2d 681 (La.1974).
We are unable to find any legal basis for the defendant's further argument that the affidavit was insufficient because it did not more fully set forth that the informer had identified the accused Smith as the killer only on the basis at the time of a photographic identification of Smith as the man who had killed her companion. (The affidavit by the deputy was sworn out at 4:00 p. m. before the line-up identification by Mary K. of the defendant as the killer.) Further, for the reasons noted in our disposition of Assignment 1, we are unable to hold to have been false the information supplied by the affiant to the magistrate who issued the search warrant to the effect that Mary K. had (by photographic identification) identified the defendant as the victim's killer.
Assignment 3 (Exclusion of women from the jury venires):
The effective exclusion of women under then-valid state law, subsequently declared unconstitutional by Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), does not retroactively affect the validity of the present jury, which was empanelled prior to the Taylor decision. Daniel v. Louisiana, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975); State v. Rester, 309 So.2d 321 (La.1975).
*204 Assignments 4 and 9 (Constitutionality of the death penalty):
The trial court did not err in denying motions to quash the indictment and for arrest of judgment, both of which urged the unconstitutionality of the statutory death penalty for first degree murder, allegedly within the trial jury's discretion to impose or not as a punishment for the same criminal conduct. See Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L. Ed.2d 346 (1972). We have held that Furman does not require us to hold unconstitutional our responsive verdicts system, by which the trial jury may find an accused guilty of a non-capital lesser crime than the capital crime of first degree murder with which he is charged. State v. Hill, 297 So.2d 660 (La. 1974).
Assignment 5 (Denial of continuance):
The offense was committed on August 23, 1974. The accused was arrested August 28. His present counsel (retained by him) filed a motion for a preliminary examination on August 30. The defendant was indicted for first degree murder on September 4. On September 10, the defendant was arraigned and pleaded not guilty, with the assistance of retained counsel, and the trial on the merits was set for December 9, ninety days later, the date on which actually held.
Pre-trial motions to suppress, to compel disclosure of information, for change of venue (later abandoned), etc., were filed in October, fixed for hearing in November, continued by agreement of counsel to December 3. On December 3, immediately prior to this hearing, the defendant's counsel filed the present motion for continuance.
The sole ground urged was that counsel had insufficient time to prepare for the trial of December 9, since he also had to investigate and prepare defenses for other serious crimes with which the defendant was charged. Also included was a general allegation of the recent discovery of some new evidence which counsel had not yet had time to investigate at the time of the motion, a week before the trial.
In denying the motion, the trial court pointed out that retained counsel had had ninety days to prepare the defense and that the showing made by the testimony of counsel did not justify a continuance. We find no abuse of discretion in this ruling, nor is any prejudice reflected by the record in this case.[2] The record, in fact, displays an extremely competent and resourceful defense conducted by retained counsel on behalf of the accused.
Assignment 7 (State cross-examination permitted of defense witness on irrelevant matter):
This assignment is based upon the trial court's failure to sustain a defense objection to the state's questioning a defense witness as to why she had ceased doing business in another parish two years earlier. (She had lost her license to run the grocery store, as was developed by her short answer to the single question allowed.) The question appears to be improper impeachment, see La.R.S. 15:490, 491, 495, and not to relate to any impeaching bias or interest, La.R.S. 15:492. Further, while a witness may be cross-examined *205 on the entire case, La.R.S. 15:280, the issue upon which the present witness was cross-examined is not shown to be relevant to the case, La.R.S. 15:441, nor to her credibility, cf. La.R.S. 15:494.
Nevertheless, we are unable to find that the defendant sustained prejudice by permitting this short answer to this irrelevant question, or that any substantial violation of a constitutional or statutory right was thereby occasioned. Thus, reversible error is not shown. See La.C.Cr. P. art. 921.

Decree
For the reasons assigned, therefore, we affirm the conviction and sentence.
Affirmed.
NOTES
[1] The numbering followed is that adopted by the defendant in brief, in which he rearranged and renumbered the twelve errors originally assigned in the trial court.
[2] The defendant had sought supervisory writs and immediate review by us of the denial of continuance. This court denied supervisory writs on December 6, 1974. La., 303 So.2d 749. A denial of supervisory review is merely a decision not to exercise the extra-ordinary powers of supervisory jurisdiction, and it does not bar consideration on the merits of the issue denied supervisory review, when appeal is taken from final judgment. Gulf States Utilities Co. v. Dixie Elec. Mem. Corp., 248 La. 458, 179 So.2d 637 (1965); State v. Theard, 212 La. 1022, 34 So.2d 248 (1948); cf., Supervisory Powers of the Louisiana Courts of Appeal, 38 Tul.L.Rev. 429, 448-49 (1964). Thus, the ruling denying supervisory writs does not (as argued) bar reconsideration of the issue on appeal and there reaching a different conclusion at to it. Borden v. Louisiana State Board of Education, 168 La. 1005, 123 So. 655 (1929).