443 So.2d 608 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Edwin YOUNG, Defendant-Appellant.
No. CR 83-12.
Court of Appeal of Louisiana, Third Circuit.
November 9, 1983.
*609 Ronnie K. Banks, Sr., Lake Charles, for defendant-appellant.
Leonard K. Knapp, Jr., Dist. Atty. and F. Wayne Frey, Asst. Dist. Atty., Lake Charles, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and CUTRER, JJ.
CUTRER, Judge.
On November 4, 1982, defendant, Edwin Young, was convicted by a twelve person jury of armed robbery, in violation of LSA-R.S. 14:64. The trial court sentenced the defendant to eight years at hard labor in the Louisiana Department of Corrections without benefit of parole, probation or suspension of sentence.

FACTS
On May 13, 1982, at approximately 11:30 P.M., a man dressed in black and wearing a mask entered Frank & Emile's Restaurant in Lake Charles, Louisiana. The restaurant was closed and the only persons present were four employees. Armed with a pellet rifle, which resembled a shotgun, the intruder entered a back door, turned off the lights and ordered the manager, Roxanne Fontenot, to open the safe. Taking approximately $2,000.00 in cash, the robber fled the premises. While in the restaurant, the robber appeared comfortable and familiar with his surroundings; therefore, the police focused their initial investigation on past and present employees.
On May 19, 1982, the defendant, who was then employed at Frank & Emile's, was approached by Calcasieu Parish sheriff's deputies about the armed robbery. At this time the officers had no firm suspects, although they felt the defendant was a "good suspect," because Ms. Fontenot had stated that the defendant was the only employee whose physical description matched that of the robber's. The investigating officers decided to request the employees of Frank & Emile's to submit to a polygraph examination. The defendant initially declined to take the exam, but, when he learned that one of his co-employees had already taken the exam and that others *610 were receiving the same request, he agreed to go to the sheriff's office and to submit to the examination.
After he had finished the polygraph examination, the defendant was read his Miranda rights by Deputies Alfred Allemond and Joseph Payne, and he signed a standard form waiving those rights.
Shortly after commencement of the questioning, the defendant confessed to the armed robbery, and a typed five page statement was prepared from the defendant's oral statements. Subsequent to his confession, the defendant signed a "search consent" form granting the deputies permission to search his vehicle. A search of the vehicle produced tangible, incriminating evidence, corroborating the defendant's confession.[1]
The defendant moved to suppress all inculpatory, tangible and written, evidence. After a hearing the trial court denied the motion, at which time the defendant applied to this court for a writ of certiorari.[2] Subsequently, the writ was denied by this court. After a jury trial on the merits, the defendant was convicted of armed robbery, in violation of LSA-R.S. 14:64. Judge W. Ellis Bond sentenced the defendant, on November 12, 1982, to serve eight years at hard labor without benefit of parole, probation or suspension of sentence. From this conviction, the defendant has appealed perfecting five assignments of error:
(1) The trial court erred in denying the defendant's motion for continuance;
(2) The trial court erred in denying the defendant's motion for a new trial on the ground that the prosecutor made at least one comment during the trial which was highly prejudicial to the jury;
(3) The trial court erred in denying the defendant's motion to suppress the tangible and written evidence obtained by the defendant's consent to search and by his confession;
(4) The trial court erred in denying the defendant's motion for a new trial on the basis of new and material evidence; and
(5) The trial court erred in denying the defendant's motion for a new trial on the ground that the verdict is contrary to the law and evidence.
The defendant has failed to either brief or argue assignments of error numbers 1, 2, 4 and 5. They are, therefore, deemed abandoned upon appeal. State v. Washington, 430 So.2d 641 (La.1983); State v. Simpson, 371 So.2d 733 (La.1979).
ASSIGNMENT OF ERROR NUMBER 3:
This assignment of error is based on the same issue previously brought before us in the defendant's writ application; i.e., whether the trial court erred in failing to suppress the defendant's confession.[3] This court is not precluded from re-evaluation of this identical issue by the earlier denial of the defendant's writ application. A denial of supervisory review is merely a decision not to exercise the extra-ordinary powers of supervisory jurisdiction, and it does not bar consideration on the merits of the issue denied supervisory review, when an appeal is taken from the final judgment. State v. Smith, 322 So.2d 197 (La.1975).
As are other constitutional rights, the Miranda [Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)] rights, which have been incorporated into Article I, § 13 of the Louisiana Constitution of 1974, are subject to being waived.[4] However, the courts "indulge in *611 every reasonable presumption against the waiver of fundamental constitutional rights." State v. Thucos, 390 So.2d 1281, 1284 (La.1980). As a result, the jurisprudence has placed a heavy burden on the State to prove beyond a reasonable doubt that the defendant waived his constitutional rights. The Supreme Court commented on the State's burden in State v. Davis, 407 So.2d 666, 670 (La.1981):

"Whenever a statement is taken without the presence of an attorney, a heavy burden rests upon the State to demonstrate that the accused knowingly and intelligently waived his privilege against self-incrimination and his right to to have counsel present.... Moreover, before a confession or inculpatory statement may be introduced into evidence, the State must prove affirmatively and beyond a reasonable doubt that the statement was free and voluntary and not made under the influence of fear, duress, menaces, threats inducements or promises....."
In demonstrating that defendant's waiver was knowing and intelligent the State must prove that defendant was read his Miranda rights and that he understood them and appreciated the possible consequences of their waiver. State v. Anderson, 379 So.2d 735 (La.1980). In Anderson, the defendant was a seventeen-year-old illiterate with the mentality of an eight year old. An expert witness testified that defendant's mental ability was in a state of continual regression. Noting these factors and that the arresting officers testified that defendant had a difficult time comprehending his rights, the court held that he was incapable of knowingly and intelligently waiving his Miranda rights. However, the opinion implicitly recognized that low mentality and illiteracy alone will not vitiate an otherwise valid waiver of Miranda rights. The court made this clear in a later opinion when it stated the following:

"Although Dr. Quillin testified that he didn't think Lewis genuinely understood all of his constitutional rights as contained in the waiver, the trial judge weighed all the factors and ruled that the defendant did make a knowing and intelligent waiver of his rights and that the statement was freely and voluntarily given. The trial judge's decision was based on the jurisprudence of this state where this court has repeatedly held that moderate mental retardation and low intelligence do not of themselves vitiate the ability to knowingly and intelligently waive constitutional rights and make a free and voluntary confession. State v. Anderson, 379 So.2d 735 (La.1980)."

State v. Lewis, 412 So.2d 1353, 1355 (La. 1982).
In State v. Ross, 320 So.2d 177, 179 (La. 1975), the court stated:
"Low mentality and illiteracy in themselves are not grounds for ruling a confession involuntary. They are merely, like other factors, to be considered in the totality of the evidence on the issue. Here it is clear that Ross obeyed the innate compulsion to confess his transgression of the law. He understood he was giving a statement regarding his participation in the crime. He was, moreover, fully advised of his rights and admitted that he understood them. His later change of heart does not render the confession involuntary."
And, the Supreme Court reiterated this position in State v. Neal, 321 So.2d 497, 499 (La.1975), as follows:

"The mere fact of illiteracy does not preclude a knowing and voluntary confession. Cf. State v. Nicholas, No. 56,438 on the docket of this Court, decision rendered 10/1/75, 319 So.2d 361 (La.1975). In the instant case, Deputy Holcomb testified under oath that he orally explained to defendant all of the rights of which an accused must be *612 informed prior to interrogation, and that defendant understood these rights. Defendant presented no evidence to contradict this testimony. Under these circumstances, defendant's inability to read and write does not affect the voluntary nature of the confession. See State v. Sears, 298 So.2d 814 (La.1974)."

These opinions clearly establish that, in determining whether a defendant's waiver of Miranda was knowing and intelligent, the focus is on whether the defendant was able to understand the rights being explained to him. State v. Lewis, supra, at 1355.
Defendant does not contend that his confession was the result of threats, promises or any other forms of coercion. Rather, he contends that his waiver was invalid because he did not understand what he was waiving due to his limited mental capacity. He draws the court's attention to the facts that he cannot read and can write only his name. At the time of the robbery, the defendant was twenty-six years of age. On direct examination his counsel read to defendant the Miranda rights, and the following colloquy occurred between the two:
"Q. Having read those same rights to you that was allegedly read to you on that particular night and the statement following the waiver of rights, would you attempt to explain to the Court what is the meaning? Do you understand those words?
A. I understand the rights, but I don't understand the meaning of the words.
Q. Do you understand me reading those words to you?
A. Yes, sir.
Q. Okay. But do you understand what the words mean in the context in which they are used?
A. No, sir."
The defendant's stepmother, Mrs. Geraldine Young, testified that the defendant could only write his name and that, because he could not read, the defendant enrolled in special education classes during his elementary school years. Mrs. Young testified that the defendant had never been found to be mentally retarded, nor was she aware that he had ever been treated for any mental defects. Defendant did not produce any expert testimony to support his contention that his limited intelligence precluded a knowing and intelligent waiver of his rights.
The State's evidence indicates, however, that the defendant fully understood his rights and the consequences of waiving them. The deputies testified that, not only did they read the defendant's "rights" to him, they explained each particular right to the defendant in "plain English" and answered the questions that he raised. According to the deputies, defendant did not appear confused at any time, and, in their opinion, he was "street wise." They told defendant that the document he was about to sign was a waiver of his rights and that the possible consequences might include arrest and a jail sentence. In fact, Deputy Allemond even read to the defendant the possible term of imprisonment he was subjected toninety-nine (99) years at hard labor without benefit of probation, parole or suspension of sentence. LSA-R.S. 14:64. The defendant admitted that, when he signed the waiver form, he told the deputies that he did understand his rights.
At the hearing on the motion to suppress, the district attorney read through the list of Miranda rights, pausing after each to ask the defendant if the deputies had made these privileges known to him. To each query the defendant responded "yes." That the defendant did understand the nature of his rights and chose to voluntarily waive those rights in confessing to the crime is best revealed by the cross examination of the prosecuting attorney:
"Q. You understood what you were telling the deputies, is that correct?
A. Yes, sir.
Q. And you understood that you didn't have to tell them that?
A. Yes, sir."
In denying the motion to suppress, the lower court found that the defendant had *613 validly waived his rights prior to the confession. In the absence of a clear abuse of discretion, this decision will not be overturned. State v. Trudell, 350 So.2d 658 (La.1977). We can find no abuse of discretion under the instant facts.
Accordingly, we find that the trial court did not err in determining that the defendant had freely, voluntarily, knowingly and intelligently waived his Miranda rights. Therefore, this assignment of error is without merit.
For the reasons assigned, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The items seized included cash, a black pouch and beer the defendant said he bought with his loot.
[2] See Writ K82-539, State v. Edwin Young, denied on October 25, 1982.
[3] Upon this appeal and in the previous writ application, no argument by the defendant has been made concerning the consent to search given by the defendant. We do not, therefore, address that issue, although we note that it is governed by the same principles applying to the defendant's confession.
[4] LSA-Const. Art. 1, § 13 provides, in pertinent part:

"Section 13. When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel....."