LABORDE, Judge.
Terry Gardner was found guilty of aggravated rape by a jury of twelve on December 18, 1986. On January 20, 1987 the *1273 trial judge sentenced Gardner to life imprisonment without benefit of parole, probation, or suspension of sentence in accordance with LSA-R.S. 14:42. Defendant appealed the conviction and sentence asserting 24 assignments of error. However, on appeal defendant briefed only nine of these assignments, therefore abandoning the other fifteen assignments of error. State v. Dewey, 408 So.2d 1255 (La.1982). The remaining assignments of error are as follows:
1. The trial court erred in denying the Motion to Quash the indictment for violation of defendants’ right to a speedy trial.
2. The trial court erred in denying the Motion to Suppress evidence seized as a result of an alleged illegal arrest.
3. The trial court erred in denying the Motion to Suppress identification testimony because of the one on one nature and because it was the product of an alleged illegal detention.[1]
4. The trial court erred in allowing the state to use a peremptory challenge to exclude a black prospective juror.
5. The trial court erred in denying the Motion for Mistrial based on prejudicial remarks of the prosecution.
6. The trial court erred in denying the Motion for Mistrial based on the state’s expression of personal opinion as to guilt.
9. The trial court erred in denying the Motion to exclude serological evidence.
22. The trial court erred in that the identification of defendant was insufficient to support the jury’s finding that defendant committed the crime.
23. The trial court erred in that the evidence was insufficient to support the verdict.
After reviewing all of these assignments of error, we hold that the assignments are without merit. We thus affirm defendant’s conviction and sentence.
FACTS
The rape with which defendant is charged occurred on December 11, 1984. The victim was a female who was 47 years old at the time of the rape. The rape occurred in a wooded area near her home in LaSalle Parish at about 11:30 a.m. She had followed a path in the woods to attempt to find a trap that had fallen off of her son’s three wheel vehicle on the previous day. Her location in the woods was about 50 yards from her home. As she walked through the woods she was tackled and thrown to the ground by a black male whom she identified as the defendant. The attacker told the victim that he thought she was a man. She told him that it was obvious that she was not a man and he should let her up. He continued to hold her down and told her “we could make good love.” She told him that if they did, it would be rape. He then took her keys, which had been safety-pinned to her waistband, and told her that he would give them back to her if she consented. She again refused. The attacker put the keys in his pants pocket. He then started hitting her with his fist about the face and chest. He then attempted to drag her further into the woods to avoid being seen by anyone. The victim struggled with him and he slammed her back and shoulders against a pine tree and then threw her to the ground. He held the victim down and started to fondle her. In describing what happened next the victim stated “I grabbed a-hold of his balls and I tried to pull them off.” This prompted the attacker to bite her on the cheek. She stated that then “I found the head of his dick and I pinched as hard as I could and he quit biting me.” He then began hitting her again and slamming her to the ground. He then partially removed her pants and vaginally raped her. The victim said that the attacker then allowed her to put her pants back on. He then pulled her to her feet saying: “come on, baby, we can *1274 have some more fun.” The victim could not remember exactly how, but at that point the attacker lessened the hold that he had on her and she pulled away and ran. She ran to her neighbors’ house which was about 40 yards away from the site of the attack. The neighbors immediately called the police (police records indicate that the time of the call was 12:14 p.m.). In a short time two police officers arrived, got a description of the attacker, and surveyed the scene of the crime. The description of the attacker was broadcasted over the police radio. Deputies of the LaSalle Parish Sheriff's Office then surrounded the wooded area where the rape occurred. Because of a prior investigation in a different case, the police officers were familiar with the woods, the paths, and where the paths exited the woods. Less than an hour after the rape was reported, several police officers, who were searching for the attacker, observed the defendant exit the woods and begin walking along a railroad track that runs parallel to U.S. Highway 84. The defendant fit the description given by the victim and the officers approached him. One of the officers knew defendant’s name and told him to stop. Defendant was wearing a long green trench coat despite the fact that it was a warm day. The defendant had his hands in his pockets and was told to remove them. He also apparently had a bulge in the back of his coat and at least one of the officers feared that this may have possibly been a weapon. One of the officers then “reached to get him,” and defendant’s coat came open. Underneath the coat the defendant had no shirt on, the fly of his pants was unzipped, and his penis and testicles were hanging out of his pants. He was then advised of his Miranda rights and placed under arrest as a suspect in the rape investigation. Defendant was searched and several articles of clothing which he was either wearing when arrested or which were found stuffed into the back of his pants under his coat matched the clothing that the victim said the attacker was wearing. The victim’s keys were found in defendant’s front pants pocket.
ASSIGNMENT OF ERROR NO. 1
Defendant was arrested on December 11,1984. His trial for aggravated rape began on December 8, 1986 and the jury’s verdict of guilty was returned on December 18, 1986. Defendant claims that this was an unreasonable delay and denied him of his right to a speedy trial under Article I, Section 16 of the Louisiana Constitution. After reviewing all of the facts present, we hold that defendant was not denied of his right to a speedy trial.
Between the time of defendant’s arrest on December 11, 1984 and his subsequent trial which began almost two years after his arrest, a bevy of motions, hearings, and writs were filed by both defendant and the DA’s office. Much of the dispute was based upon the fact that defendant was initially charged under a bill of information rather than a grand jury indictment as required by the Louisiana Constitution.[2] Further delaying the proceedings was the fact that defendant’s initial court-appointed attorney had to be replaced by a new court-appointed attorney.[3] Defendant’s new court-appointed attorney filed extensive motions and pleadings that further delayed the trial on this matter. A complete list of all motions, hearings, etc. filed in this matter by both sides is too extensive to recite herein. Suffice it to say that these procedural matters were enough to cause a substantial delay in the start of defendant’s trial.
In determining whether a defendant has been deprived of his right to a speedy trial, four factors must be considered: (1) length of delay, (2) reason for the delay, (3) defendant’s assertion of his right, and (4) prejudice to the defendant. State v. Sweeney, 443 So.2d 522, 526 (La.1983). The first two factors to be considered have already been discussed. Defendant appar *1275 ently did assert his right to a speedy trial although a copy of such a motion is not contained in the record.
As to the final factor, prejudice to the defendant, the defendant argues that the delay resulted in his inability to defend himself. He claims that he has no recollection of the events of December 11, 1984 as he has a low intelligence level and memory problems. He thus argues that he could not sufficiently defend himself against the charges of aggravated rape. Defendant relied on testimony of several doctors to support the contention that he has memory problems. A review of the testimony by these doctors does reveal that defendant is of below average intelligence and may not possess the memory of a person of average intelligence. However, the trial judge considered the totality of the evidence and held that the delay in commencement of defendant’s trial did not prejudice the defendant. One member of the Sanity Commission that reviewed defendant’s mental condition, Dr. I.C. Turnley, stated that there was “questionable” evidence of defendant’s memory loss. Another, Dr. Robert T. Kendrick, in discussing the mental capabilities of Terry Gardner, stated: “His memory was felt to be intact. Terry Gardner is able to understand the legal proceedings against him and is able to assist in his defense should he choose to do so.” Dr. F.A. Silva also examined defendant and felt that he may have some memory problems, but has the capacity to remember events that would be considered as important in his life. Finally, Dr. Milton S. Rhea was not as confident about defendant’s memory ability and felt that he may distort and confuse events and not be able to give an accurate account of certain events in his life. After reviewing the testimony in this matter, we agree with the trial court’s holding that the delay was not prejudicial. We further point to LSA-C.Cr.P. art. 578 which requires that trials for felony cases be commenced within two years of the date of institution of prosecution. Although just barely, the requirements of this article were met here. We thus hold that defendant’s assignment of error No. 1 is without merit.
ASSIGNMENT OF ERROR NO. 2
Defendant contends that his motion to suppress physical evidence should have been granted because the evidence was obtained as a result of an illegal arrest. More specifically defendant contends the arrest was illegal because the police lacked probable cause. La.C.Cr.P. art. 213 provides in pertinent part “A peace officer may, without a warrant, arrest a person when: ... (3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer; ...” As far as an arrest is concerned, reasonable cause as used in La.C.Cr.P. art. 213 is the same as probable cause. State ex rel Bailey v. City of West Monroe, 418 So.2d 570, 573 (La.1982), states: “Probable cause to arrest exists when facts and circumstances are sufficient to justify a person of ordinary caution in believing that the person to be arrested has committed a crime.”
The description received by the police from the victim and the location of the defendant when arrested support a finding of probable cause. After freeing herself from her attacker, the victim ran to her neighbor’s house. She told her neighbors of the rape and they immediately called the police to report the rape. According to a deputy of the LaSalle Parish Sheriff’s Department, the description of the rapist given to the police was “a black male; five foot, ten; about 150 pounds; a cut in his right ear; suspect was wearing a wedding band on his right hand with a green and gray sweater with diamond shapes. Also a blue baseball cap with white spiked tennis shoes with a white stocking on his head.”
After receiving the report that a rape had occurred, police attempted to seal off the exits to the wooded area where the rape had occurred. While stationed at his post one of the officers observed a black male coming out of the woods. Officers in the area approached the man because he was exiting the wooded area where the rape occurred and “he fit the description of the person we was looking for....” The defendant is black, about 5 foot 8 inches *1276 tall with a slender build. His face was pitted, as was the rapist’s. He wore blue jeans, tennis shoes, wore a stocking on his head and was wearing a wedding band. Defendant had a cut in his ear, although it was in his right ear and not in the left ear as described by the victim.[4] Defendant was also wearing a long green military style trench coat although it was a warm afternoon.
In determining whether probable cause exists, the totality of the circumstances must be considered. State v. Smith, 433 So.2d 688, 692 (La.1983). In considering the totality of these circumstances — defendant’s proximity with where the rape occurred, and the match in the description of defendant with the rapist — it appears that probable cause existed to stop the defendant. The fact that defendant had a bulge in the back of his coat which was feared as a possible weapon and defendant’s coat came open at some point exposing that his penis was hanging out of his pants, gave the police officers further probable cause to arrest defendant. The search of defendant was lawful as a search incident to arrest and the sweater, keys, etc. which were found on the defendant were admissible evidence. The trial court held that there was sufficient probable cause to stop and subsequently arrest defendant. The trial court’s determination of probable cause to arrest, and the reasonableness of any search which proceeds therefrom are entitled to great weight. State v. Nicholas, 397 So.2d 1308, 1314 (La.1981). We agree with the trial court’s finding that probable cause existed in this case. Defendant’s assignment of error No. 2 thus lacks merit.
ASSIGNMENT OF ERROR NO. 3
Defendant contends the trial court erred in denying his motion to suppress identification testimony because it was tainted by a one on one confrontation and it was the product of an illegal arrest. The contention that the testimony should have been suppressed as a product of an illegal arrest was dealt with in Assignment of Error No. 2.
The characterization by defense counsel that this was a one on one confrontation stems from the fact the defendant was the only black man seated at the counsel table when the identification was made. In State v. Johnson, 343 So.2d 155 (La.1977), the defendant contended that the occupation of the defendant’s chair at the counsel table has identifying properties strongly suggesting to the witness that the person occupying that position is the perpetrator of the crime. That court rejected that contention saying that this circumstance does not indicate or unduly suggest to the witness that defendant committed the crime, only that he is charged with its commission. The right to cross examine the witness is sufficient to remedy any suggestion in the identification. A showing of suggestiveness alone will not result in suppression of an identification. In addition to proving suggestiveness, defendant must also prove there was a likelihood of misidentification. Factors to consider in determining the likelihood of misidentification include:
1) opportunity of the witness to view the criminal at the time of the crime;
2) the witness’s degree of attention;
3) the accuracy of prior descriptions;
4) the level of certainty demonstrated at the confrontation; and
5) the time between the crime and confrontation.
State v. Lowenfield, 495 So.2d 1245, 1253-1254 (La.1985). In considering the first two factors, it is noted that at a preliminary examination on June 3, 1986, it was suggested that the victim was too frightened during the rape to pay attention to the rapist’s appearance. In response the victim stated: “No, sir. Because I made myself look at this man that was attacking me, and I made myself remember what he looked like so that if I did get away that I could describe him to the officers so maybe *1277 that they could catch him.” The rape apparently lasted about 45 minutes and the victim testified that during the rape the attacker was “right in my face.” Considering these facts, it is apparent that the first two factors are met.
The third factor to consider is the accuracy of prior descriptions. The victim gave a statement to the police on the afternoon of the rape. That description matched in almost every detail the physical build of defendant and the clothing worn and found on the defendant. The only two inconsistencies were that there was a cut on the defendant’s right ear instead of his left as alleged by the victim (see footnote 4) and defendant wore a brown stocking on his head while the victim claims the attacker wore a white stocking on his head. Other than these discrepancies, the description of the attacker given by the victim is a very accurate description of the defendant at the time he was arrested.
The next factor to consider as to the likelihood of misidentification is the level of certainty demonstrated at the confrontation. When identifying her attacker at trial, the victim was asked if she were sure that the man she was identifying was the rapist and she responded “I’m positive.” While testifying at the trial, the victim was also asked if the time period between her attack and the trial had caused her memory to dim. She responded: “Sir, what I went through, I will never forget that or what he looked like, I don’t care if it’s a hundred years. That is him.” From these statements it is obvious that the victim was very certain when she identified defendant as the rapist. Her testimony also reflects that the time period has in no way affected her ability to identify defendant.
After considering all relevant factors that could lead to misidentification, we feel that the factors listed in Lowenfield were not present. We thus hold that this assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 4
Defendant contends that the trial court erred in allowing the state to use a peremptory challenge to exclude a prospective black juror. Under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the defendant has the burden of proving purposeful discrimination. The defendant:
1) Must show that he is a member of a cognizable racial group and the prosecution exercised peremptory challenges to remove venire members of the defendant’s race.
2) Is entitled to rely on the fact that peremptory challenges permit those who have a desire to discriminate to do so.
3) Must show that these facts and other relevant circumstances raise an inference that the prosecution used that practice to exclude the veniremen from the petit jury based upon their race.
Batson, supra. Once the defendant makes such a showing, the state must then give a neutral explanation as to the challenge of the juror. Batson, supra.
Defendant is a member of a cognizable racial group and the state did use a peremptory challenge to exclude Aquilla Knight, a black woman, from the jury. While defendant may rely on the fact that peremptory challenges constitute a jury selection practice that permits “those to discriminate who are of a mind to discriminate,” he must still show that the facts and other relevant evidence raise an inference that the prosecution used the practice to discriminate on the account of race. Defendant points out that the prosecution asked two potential black jurors questions concerning whether or not they felt that the court system was slanted against black persons. Defendant admits that one of the jurors was properly dismissed due to her familiarity with defendant’s family. Defendant, however, claims that such questions were not proper as to the other juror and exercising a peremptory challenge as to that juror was not proper. This is the only assertion made by defendant. We are not at all convinced that these allegations by defendant are sufficient to constitute a prima facie showing of purposeful discrimination. Regardless, we feel that the prosecution sufficiently provided a neutral expía- *1278 nation for exercise of this peremptory challenge. The juror stated that she personally knew four of defendant’s siblings and had attended school with two of them. She also knew defendant’s mother and lived in the same small community as defendant and his family. The prosecution initially challenged the juror for cause[5] stating:
“we would challenge this juror for cause under the provision that despite her honest efforts and her, her best intention she is friendly with and knows not only the defendant’s mother, but four of his siblings, and although I know she would try her best I believe that, particularly in a small community as this, this would put a great deal of pressure on this juror.”
The trial judge denied the challenge for cause. The prosecution then based a peremptory challenge on the same grounds. The trial judge found these were adequate reasons for exercising the peremptory challenge and the juror was excused. We hold that the state did in fact offer a neutral explanation for exercise of the challenge and thus rebutted any possible prima facie showing of purposeful discrimination in jury selection. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NOS. 5 AND 6
These assignments of error allege that defendant’s motions for mistrial should have been granted due to prejudicial comments and an expression of personal opinion made by the State during its opening statement. The alleged prejudicial comments were:
1. “She like any one of you thought that she could safely go through life that day ...”
2. “... and the evidence will show that she was brutally, horribly defiled and violated by this ...”
3. “She received a beating without mercy.”
After each of these statements, defense counsel objected and requested a mistrial. The alleged statement of personal opinion went as follows:
“I think the evidence will show after it’s presented in its entirety that the defendant, Terry Gardner, beyond any reasonable doubt, committed aggravated rape on [victim].”
Defense counsel again requested a mistrial. The trial judge denied the mistrial in each instance. The trial judge did however admonish the jury to disregard the comments made by the prosecution in accordance with LSA-C.Cr.P. art. 771.
LSA-C.Cr.P. art. 775 requires that a mistrial be ordered when prejudicial conduct makes it impossible for the defendant to obtain a fair trial. In State v. Smith, 430 So.2d 81, 44 (La.1983), the court said that a mistrial is a “drastic remedy” which should be granted only when unnecessary prejudice results to the accused. The trial judge may use his sound discretion to determine if any such prejudice exists. In a different State v. Smith, 433 So.2d 688, 696 (La.1983), the court held that unless there has been an abuse of discretion, a trial judge’s denial of a mistrial will not be disturbed on appeal. The motion should be granted only where the defendant suffers such substantial prejudice that he has been denied of any reasonable expectation of a fair trial.
The first three statements by the prosecution were of some prejudicial effect to defendant. However, each was later supported by evidence. Any prejudice that may have occurred was likely removed by the judge’s admonition to the jury. These statements did not deprive defendant of a fair trial.
In State v. Kaufman, 304 So.2d 300, 306 (La.1974), cert denied, 429 U.S. 981, 97 S.Ct. 495, 50 L.Ed.2d 591 (1976), the court discussed comments of personal opinion made by the prosecution. The court stated that the effect of such a statement of opin *1279 ion would have an irrevocable effect on jurors unless it was expressly based on evidence presented and not simply on the prosecutor’s knowledge of facts outside of the record. In the case at hand, it should have been apparent to the jury that the opinion statement was expressly based on the evidence to be presented to them and thus the comment does not require the grant of a mistrial.
Because the comments did not deprive defendant of a fair trial and the expression of personal opinion was expressly based on the evidence the jury would hear, the trial judge did not abuse his discretion in denying the motions for mistrial. These assignments of error lack merit.
ASSIGNMENT OF ERROR NO. 9
In this assignment of error, defendant contends that the trial court erred in admitting serological evidence. This evidence was the result of an analysis done on semen specimens obtained from the vaginal vault of the victim soon after the rape and blood and saliva samples obtained from the defendant after his arrest. The analysis found that when the semen specimens were compared to the blood type and blood chemistry of defendant, there were several similarities. Experts from the Northwest Louisiana Criminalistics Laboratory opined that the semen samples obtained from the victim would match only one out of ten black males in the LaSalle Parish area, and defendant matched these characteristics. Defendant sought pre-trial exclusion of the evidence challenging its reliability. The trial judge allowed the evidence to be admitted.
Serological evidence may be used as evidence against a defendant in a rape case. State v. Campbell, 474 So.2d 560 (La.App.3d Cir.1985). Contrary to defendant’s contention, there is an abundance of evidence, other than the serological evidence, to support his conviction. The serological evidence was only a small portion of the evidence against him. In his reasons for judgment, the trial judge stated that sero-logical evidence “is admissible as part of the evidence” in the proof of the case by the state. He further stated: “Standing alone, such evidence might not be sufficient to justify a conviction. However, the jury may take this evidence into consideration of all else that might be presented by the state in determining the guilt or innocence of the defendant.” This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 22
Defendant contends that the record does not reflect that the defendant was identified by the victim as the rapist. Defendant argues that the trial court transcript is insufficient to show that defendant was the man identified as the rapist and thus a reviewing court would be unable to determine that defendant was the person so identified. The relevant portion of the transcript reads as follows:
“Q. Did you get a good look at your attacker?
A. Yes, sir.
Q. Do you see your attacker in the courtroom.
A. Yes, sir.
Q. Would you point him out please?
A. He is sitting right there (points to person in courtroom)
Q. Are you sure.
A. I am positive.
Q. Does he look the same today as he did when you were attacked.
A. He is clean shaven, he had a stocking on his head so I don’t know whether he had hair or whether it was bald. But that is the same guy, the same mannerisms, the same smirk on his face. The same enjoyment that he got out of watching me suffer.
Q. [victim’s name]
A. Yes.
Q. It has been slightly more than two years and a few days since your attack, during that two years has your memory of your attack and your attacker dimmed in any respect that you are aware of.
A. Sir, what I went through, I will never forget that or what he looked like, I *1280 don’t care if it is a hundred years. That is him.”
Defendant apparently alleges that this court will not know who the “person in courtroom” was to whom the victim pointed. Although proper prosecutorial practice would have probably been to request that the record reflect that defendant was the person pointed to, we do not feel that the record is vague as to whom the victim pointed. Defense counsel was able to observe who the victim pointed to, yet he never made any mention that anyone other than defendant was the person to whom she pointed. The jury was able to see whom she pointed to and they found defendant to be the rapist after deliberating for only seventeen minutes. The trial judge apparently did not disagree with the jury’s finding of guilt as he sentenced defendant to life imprisonment. We find it ironic that defendant claims that there was no identification evidence, yet defendant seeks to have this very same evidence excluded in his assignment of error No. 3. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 23
Defendant contends that the evidence is insufficient to support the verdict of guilty. In making such a determination we must decide whether the evidence, when viewed in a light most favorable to the prosecution, could cause a rationale trier of fact to find that all of the elements of a crime were proven beyond a reasonable doubt. State v. Williams, 423 So.2d 1048 (La.1983).
The evidence in the record certainly supports the jury’s conclusion that defendant was the person who raped the victim. A simple comparison of the description given by the victim after she was raped and the defendant’s appearance when he was arrested lends strong support to his conviction in this case. The victim described the rapist as a black male, about 510" tall, 150 pounds, pitted face, mustache, a white stocking on his head, a blue baseball cap, a green/grey sweater with a diamond design on the front, blue jeans, white tennis shoes, a whitish shirt underneath the sweater, a cut on his left ear, and wearing a wedding band. The only distinction between that description and how defendant appeared and the items he either wore or had in his possession were that he was wearing a brown stocking on his head (instead of white), had a cut right ear (instead of left) and was wearing a long green trench coat (which the victim did not mention in the description). When the defendant was arrested he was wearing no shirt underneath the trench coat, his pants were unzipped, and his penis and testicles were hanging out of his pants. The victim stated that the rapist took her keys from her and these same keys were found in defendant’s pants pocket when he was arrested.
Serological evidence showed that the defendant could have been the donor of the semen found in the victim’s vaginal vault. That same evidence showed that only one in ten black males in the area could have been the donor of the semen. Results of a fiber analysis were presented as evidence and showed many points of similarities between fibers found on the victim’s clothing and those contained in the sweater that was found on defendant’s person. The evidence could not conclusively prove that these fibers came from defendant’s sweater, but proved that they could have come from the sweater. Finally, the victim positively identified the defendant as her attacker.
Defendant contends that certain inconsistencies in the case against defendant should preclude his being found guilty beyond a reasonable doubt. These inconsistencies are lack of trauma to defendant’s testicles when he was examined after his arrest, the discrepancy as to which ear of the rapist was cut, and testimony that soil found on defendant’s clothing did not match soil found on the clothing of the victim. We have already discussed this issue concerning the cut ear (see footnote 4). Concerning the lack of trauma to defendant’s testicles, defendant argues that since the victim claims that she grabbed the rapist’s testicles and since an examination by Dr. Turnley after the rape revealed no outward trauma to defendant’s testicles, defendant could not have been the rap *1281 ist. We hardly feel that simply because the victim claims to have grabbed the rapist’s testicles, outward signs of trauma to his testicles would necessarily be present. As to the soil found on defendant’s clothes, the evidence reveals that the rapist laid on top of the victim when he raped her. He also dragged her from one part of the woods to another. Defendant was found exiting the woods about an hour after the rape. It is obvious that the dirt found on the defendant’s clothes could have gotten there at some time before or after the rape. Since during the rape the victim was moved from one place in the woods to another, even during the rape, dirt may have gotten on the victim’s clothes at one place and on the defendant’s clothes at another. A showing that dirt on defendant’s clothes came from a different source than dirt on the victim’s clothes can hardly preclude defendant from being found guilty beyond a reasonable doubt.
After reviewing all of this evidence, we hold that any rational trier of fact could have found beyond a reasonable doubt that a rape was committed and that defendant was the perpetrator. The manner in which the victim struggled and resisted to the utmost until finally being overcome by defendant’s use of force supports the conviction of aggravated rape. The trial judge considered the medical testimony and ruled out defendant’s plea of not guilty by reason of insanity. We have reviewed the evidence and agree with the trial judge’s ruling. Defendant’s final assignment of error thus lacks merit.
For the foregoing reasons, the conviction and sentence of Terry Gardner are affirmed.
AFFIRMED.

. The first three assignments of error were the subject of an application for supervisory relief filed with this court in August, 1986. At that time we denied the application finding no error in the trial court’s decision. That denial, however, does not preclude us from re-evaluating the identical issue on appeal from a final judgment. State v. Smith, 322 So.2d 197 (La.1975); State v. Young, 443 So.2d 608 (La.App.3d Cir.1983).

. The United States District Court for the Western District of Louisiana, Judge F.A. Little, Jr. presiding, considered these facts and held that defendant was not entitled to habeas corpus relief in a ruling dated May 29, 1986.

. Defendant’s first court-appointed attorney had to resign from the case as he was appointed as Assistant District Attorney of LaSalle Parish.

. The victim seemed confused when testifying as to which ear of the rapist was cut. She insisted that it was his left ear, but pointed to her left ear and said that the cut was on that side as the rapist lay on top of her facing her (which would mean the cut was in the rapist’s right ear.)

. LSA-C.Cr.P. Art. 797 states (in pertinent part):
"The state or the defendant may challenge a juror for cause on the ground that:
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict."